[Filed January 2, 1888.]

## ALLEN AND LEWIS, APPELLANTS, *v.* AGEE AND MILLER, RESPONDENTS.

POSSESSION—DELIVERY OF—WHAT IS.—The agent of appellants bought wheat in a warehouse and left orders for its delivery on board the cars, which was done, and the cars placed on a side track awaiting transportation. In this condition the defendants, being a sheriff and his deputy, seized the wheat by virtue of a writ of replevin sued out by B. & B., who asserted title thereto. *Held*, the delivery was complete.

APPEAL from Douglas County.   Reversed.

Facts are stated in the opinion.

*J. W. Hamilton*, and *J. P. Watson*, for Appellants.

*W. R. Willis*, for Respondents.

LORD, C. J.—The plaintiffs are partners, doing business under the firm name of Allen and Lewis.   The complaint alleges in substance that plaintiffs are the owners and entitled to the possession of three hundred and fifteen sacks of wheat marked No. 13, of the value of four hundred and eight dollars, and in possession of R. Koehler, receiver of the O. & C. R., a common carrier, delivered to him by plaintiffs to be carried from Dillard to Portland, Oregon.   That on the twenty-fifth day of September, 1886, at Dillard, Douglas County, Oregon, defendants wrongfully took the same from the possession of said Koehler, and detained the same to the plaintiffs' damage, etc.   After denial, the defendants for a separate answer allege, in substance, that the firm of Bremner and Buxton were the owners of this wheat, and that on the twenty-fifth day of September, 1886, commenced an action to recover the same from W. F. Owens and J. M. Dillard, and by an indorsement on the affidavit filed therein, required the defendant B. C. Agee, sheriff, "to take said property in the complaint herein described into his possession"; that the wheat was in the possession of the defendant James Dillard as warehouseman; that said affidavit and indorsement therein, with an undertaking, was delivered to defendant Agee, and that

defendant Miller was his deputy, and that the defendant Miller, on the date aforesaid, in accordance with said authority, took said property into his possession from the defendant James Dillard, etc.; and further, that the property taken was the property of said Bremner and Buxton, and that they were entitled to the possession.

The reply put in issue the material facts, and the trial resulted in a verdict and judgment for the defendants, from which comes this appeal. The evidence as disclosed by the bill of exceptions is to this effect: That one Merrill, at the times mentioned, was the agent of the plaintiffs in buying and shipping wheat; that the wheat in dispute had been stored in the warehouse of James Dillard, at Dillard Station, by Messrs. Bremner and Buxton; that Merrill purchased a lot of wheat subsequently of W. F. Owens, including the wheat in dispute, for which he (Owens) gave him an order on Dillard in writing, who accepted the order in writing on the twentieth day of September, 1886; that Bremner and Buxton gave their written order to J. M. Dillard to ship their wheat subject to the order of W. F. Owens; that the railroad company had no regular agent at Dillard Station, but when notified that goods were to be transported left cars on the side track at the warehouse to receive them; that Merrill ordered the cars of the agent at Roseburg sent out to Dillard to receive the wheat, and had him make out shipping receipts for three car loads; that the cars were sent there in accordance with his directions, and loaded with wheat by Dillard out of his warehouse, including the wheat in dispute, who made out his memoranda, "locked the cars, and left them for the train, and had nothing more to do with the wheat or cars;" that subsequently, and on the twenty-fifth day of September, 1886, Messrs. Bremner and Buxton, as plaintiffs, commenced an action against Owens and Dillard, as defendants, to recover said wheat, and that the defendants in the present action as such officers as alleged on the order referred to, and on the day last aforesaid, took the wheat in controversy out of the cars in which it was loaded into their possession. From the pleadings and the evidence thus adduced, it will be seen that the trial was devoted mainly to determining

who had possession of the wheat at the time the defendant officers took it from the cars in the action of *Brémner and Buxton* v. *Owens and Dillard.*

The error assigned in the instructions given by the court are all directed to this point, that the evidence showed a delivery to the railroad and a possession by them for the plaintiffs. This is the contention of counsel for the plaintiffs, and is the marrow of the case. The purchase and the authority to deliver the wheat is not disputed, only that any actual possession of the property had been taken by the railroad company. The evidence shows that the railroad company placed the cars on the side track at the warehouse, at the instance of the agent of the plaintiffs, for the purpose of receiving, with other, the wheat in dispute for the plaintiffs, and that it was removed from the warehouse and put in the cars in pursuance of this purpose, and by rightful act duly authorized. But it is contended that this did not constitute a delivery of the wheat to the plaintiffs, because the company having no regular agent at that place, there was no acceptance, and consequently, that the wheat still remained in the possession of Dillard at the time of the seizure by the defendant officers. The agent of the plaintiffs, or what is the same thing, the plaintiffs, were the contractors for the shipment of this wheat; their agent had not only selected the railroad company as its carrier, but by agreement, the company had sent its cars at the place designated by him to receive the wheat for the plaintiffs, and when in pursuance of that agreement, the wheat was delivered aboard of the cars, it must necessarily have been with their knowledge and consent.

In *Ill. Cent. R. R. Co.* v. *Smyster & Co.* 38 Ill. 360, the court say : "The side track and the cars belong to the company, and are under their exclusive control; and there is no question that the company placed this car at a point opposite the wharf boat on which the cotton was stored, for the express purpose of having it transferred from the boat to the car, that they might transport it to the point desired by the shipper. The company had unquestionably the exclusive use and control of their road, side tracks, and freight cars; no use could be made of them

without the consent of the company. So long as a car remained on their road or side track it was under their control, and necessarily in their possession. They had the right to permit their cars to stand at the point at which this one was placed. The company at any moment, at least after the car was loaded, had the unquestioned right to remove it to any other part of the road, but the commission merchant has no such right, even if he had possessed the means. The wharf boat, on the contrary, was in the possession of the commission men, and the cotton so continued until it was placed in the car. It there passed into possession of the company as effectually as if it had been delivered in their warehouse. They substituted their car for their warehouse, no doubt for the mutual convenience of all parties. And this, too, with the assent of the company, to promote their interest, is the prosecution of the business for which it was created. If this was a box car, the company had the right as soon as the cotton was placed in it to have closed and locked it, or if an open car, they had an equal right to have secured the cotton, and any person interfering with it would have been a trespasser, and the company could have recovered damages for the injury thus perpetrated. No difference is perceived in receiving freight on the platform of their depot and into their cars at any place on their road or side track; or whether it is placed there by their employees or by other persons, so it is done with the assent of the company."

The case in hand possesses all these features, strengthened by some other additional facts. Here the side track and the cars belonged exclusively to and were under the control of the company. They placed their car on the side track at the warehouse, by request and agreement, where the grain in dispute was stored, for the express purpose of having it transferred from the warehouse to the car, that they might transport it to the point desired by the shipper. Nor could any one use and control their road, side track, and freight cars without their consent, and necessarily they must have been in their possession. When the cars were loaded the company could move them, but no other person could without their consent. Dillard says he had authority to load

the cars, and the company had given him the keys, and he testifies that "he loaded the wheat, locked the cars, and left them for the train to take, and had nothing more to do with the wheat or cars." Could any acts be more decisive of a delivery to, or acceptance by the carrier or company, than by placing cars at a side track of a warehouse and giving keys to the person authorized to load the cars, and his putting the wheat aboard of them and locking them up? Could it be said in such a case that the wheat was put in the car without the knowledge or consent of the company? Or can it be doubted that when the wheat was taken from the warehouse and placed in the cars, that it did not then pass into the possession of the company as effectually as if it had been delivered in their warehouse? In this case, the cars of the company took the place of a warehouse, and it was done not only for the mutual convenience of the parties, but by an express understanding with the company that the cars should be placed by them on the side track at the warehouse to receive the wheat, and when loaded on the cars in accordance therewith, necessarily was done with the knowledge and assent of the company, and consequently was a delivery to or acceptance by them, which is one and the same thing. The wheat, therefore, was not in the possession of Dillard and Owens, but of the company for the plaintiffs, and was a good delivery to the defendants.

The further objection was also made to the admission of the affidavit for delivery and indorsement thereon against objection, on the ground that it did not sufficiently describe the property, and that the statute was not complied with or followed in the order for taking the property from *the defendant.* The court entertains some doubts as to the sufficiency of the order, for the last reason suggested, but has concluded to pass it.

The judgment must be reversed.